IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sergio Eduardo Chaj Avila, | No. CV-26-01133-PHX-SHD (MTM) |
| Petitioner, | |
| v. | **ORDER** |
| Kristi Noem, et al.,[1] | |
| Respondents. | |

Petitioner filed this action under 28 U.S.C. § 2241 challenging his immigration detention.  (Doc. 1.)  The Court directed Respondents to answer the Petition and required Petitioner to file a reply.  (Doc. 5.)  Upon review of the briefing, the Court will grant the Petition and order Petitioner's immediate release from custody.

**I.   BACKGROUND.**

Petitioner is a native and citizen of Guatemala.  (Doc. 1 at 5.)  On March 29, 2022, Petitioner entered the United States.  (*Id.*)  On March 30, 2022, he was apprehended by Respondents.  (*Id.*)  He was then issued a Notice to Appear that charged him as inadmissible under Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i)—codified at 8 U.S.C. § 1182(a)(6)(A)(i).[2]  (Doc. 1-1 at 24.)  Thereafter, as Respondents concede, Petitioner was "released into the United States and released on his own recognizance."  (Doc. 7 at 2.)

On March 20, 2023, an Immigration Judge ("IJ") administratively closed

---

[1]   Pursuant to Federal Rule of Civil Procedure 25(d), Secretary of Homeland Security Markwayne Mullin is substituted for Kristi Noem.

[2]   This provision states that an immigrant who is present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible.  8 U.S.C. § 1182(a)(6)(A)(i).

Petitioner's removal proceedings. (Doc. 1 at 2.) In January 2026, Petitioner was detained by U.S. Immigration and Customs Enforcement ("ICE") officers. (*Id.* at 3.) Petitioner has remained in Department of Homeland Security ("DHS") custody since that time. (*Id.*

On February 18, 2026, Petitioner filed the instant Petition. (*Id.* at 16.) In his Petition, Petitioner asserts that his current immigration detention violates both Fifth Amendment substantive due process and procedural due process. (*Id.* at 13–15.) On that same day, the Court ordered that Respondents respond to Petitioner's Petition. (Doc. 5.) On February 26, 2026, Respondents filed their Response. (Doc. 7.) In their Response, Respondents assert that: (1) "[a] pre-detention hearing is an improper extra-statutory remedy to which Petitioner is not entitled and due process does not require"; (2) "Petitioner is subject to mandatory detention under 8 U.S.C. § 1225"; and (3) the Central District of California's decision in *Bautista v. Santacruz*, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025), "has no preclusive effect outside the Central District of California."[3] (*Id.* at 2–9.) Petitioner has not filed a reply, and the deadline for doing so has expired.

Because the Court finds that Petitioner's re-detention without a pre-deprivation hearing amounts to a procedural due process violation, the Court need not address Petitioner's substantive due process claim. Further, because the Court finds that Petitioner is entitled to relief absent *Bautista*, the Court will not address Respondents' *Bautista* contention.

## II. DISCUSSION.

The Due Process Clause protects all persons within the United States from being

---

[3]   Additionally, Respondents assert that the warden is the only proper respondent here. (Doc. 7 at 1 n.1.) The Court need not address this matter in depth. "[I]n habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). The Ninth Circuit Court of Appeals has "affirm[ed] the application of the immediate custodian and district of confinement rules to core habeas petitions filed pursuant to 28 U.S.C. § 2241, including those filed by immigrant detainees." *Doe v. Garland*, 109 F.4th 1188, 1199 (9th Cir. 2024). While both *Doe* and *Padilla* set forth the rule that a habeas petitioner must name the warden of the facility where they are detained, these decisions did not preclude naming more than one Respondent. Hence, the Court does not find dismissal proper in the instant action.

"deprived of life, liberty, or property, without due process of law." U.S. CONST. Amend. V. It is well established that the Due Process Clause applies to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). The Court's due process analysis is separated into two steps: "first [courts] ask whether there exists a liberty or property interest of which a person has been deprived, and if so [courts] ask whether the procedures followed by the [government] were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

### A.    Statutory Classification and Corresponding Liberty Interest

"A noncitizen's place within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Avilez v. Garland*, 69 F.4th 525, 529 (9th Cir. 2023) (cleaned up). Here, Petitioner contends that he is properly classified under 8 U.S.C. § 1226(a). (Doc. 1 at 7–13.) Respondents disagree. (Doc. 7 at 4.) Instead, Respondents assert that "Petitioner is subject to mandatory detention under 8 U.S.C. § 1225." (*Id.*). The Court agrees with Petitioner.

While Respondents treated Petitioner as an arriving alien on March 30, 2022, and could have subjected him to mandatory detention under § 1225(b), they elected to release him on conditional parole[4] under § 1226(a). Respondents concede that DHS authorities released Petitioner "into the United States and ***released on his own recognizance***." (*Id.* at 1) (emphasis added). Hence, Respondents' argument that Petitioner is subject to § 1225 or that somehow an immigration official made a mistake after-the-fact is unavailing.

Because the Court finds that Petitioner was granted conditional parole under § 1226(a), it finds, as a growing number of our sister districts have held, "that individuals like Petitioner who were released from immigration detention on an order of recognizance have a liberty interest in that release." *Singh v. Unknown Party*, No. CV-26-00483-PHX-

---

4    "[T]he phrase 'release on recognizance' [i]s another name for 'conditional parole' under § 1226(a)." *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007).

JCH (CDB), 2026 U.S. Dist. LEXIS 61597, at *5 (D. Ariz. Mar. 24, 2026) (citing *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1046 (E.D. Cal. 2025) ("Petitioner's release from custody in January 2024 and ties to his community provide him with a protected liberty interest."); *Colman-Randas v. Cantu*, No. CV-25-03594-PHX-MTL (ASB), 2026 U.S. Dist. LEXIS 45216, at *3–4 (D. Ariz. Mar. 5, 2026) ("But 'the government cannot switch tracks and subject Petitioner to mandatory detention under section 1225(b)(2) when the government has instead placed Petitioner in removal proceedings under section 1229a and released her on her own recognizance under section 1226(a).'" (cleaned up) (quoting *Zapata v. Kaiser*, 801 F. Supp. 3d 919, 936 (N.D. Cal. 2025))); *Carcamo v. Noem*, No. 2:26-cv-00463-RFB-MDC, 2026 U.S. Dist. LEXIS 45025, at *5 (D. Nev. Mar. 5, 2026) ("Because Petitioner was not placed into expedited removal proceedings, but rather placed into standard proceedings under § 1229a, and was previously released by immigration authorities on an OREC pursuant to 8 U.S.C. § 1226, Petitioner's detention is governed by § 1226[.]"); *Tinoco v. Noem*, No. 1:25-cv-01762-DC-JDP (HC), 2025 U.S. Dist. LEXIS 258056, at *13–14 (E.D. Cal. Dec. 13, 2025) ("Having elected to proceed with full removal proceedings under § 1226, Respondents cannot now reverse course and institute § 1225 expedited removal proceedings." (quoting *Clavijo v. Kaiser*, No. 25-cv-06248-BLF, 2025 U.S. Dist. LEXIS 163056, at *11 (N.D. Cal. Aug. 21, 2025))).

While "reviewing courts . . . are generally not free to impose [additional rights] if agencies have not chosen to grant them," *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 582 (2022) (cleaned up), "[g]overnment actions may create a liberty interest entitled to the protections of the Due Process Clause," *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (citation omitted).  Therefore, upon Petitioner's release, he gained a liberty interest in his release.

### B.    Proper Procedural Process

Because Petitioner has a liberty interest in his release, the Court must now determine what procedures are required.  In conducting this analysis, the Court applies the three-part *Mathews v. Eldridge* test. Under the *Mathews* test, the Court considers:

- 4 -

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

As to the first factor, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause."); *Addington v. Texas*, 441 U.S. 418, 425 (1979) ("This Court repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."); *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."); *Rodriguez v. Marin*, 909 F.3d 252, 256–57 (9th Cir. 2018) ("Arbitrary civil detention is not a feature of our American government. 'Liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'") (cleaned up) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)); *cf. Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) ("The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review") (citing *Boumediene v. Bush*, 553 U.S. 723, 781–83, 786 (2008)). This factor favors Petitioner.

Turning to the second factor, "[w]here an individual has not received a bond or redetermination hearing, the risk of an erroneous deprivation [of liberty] is high." *Aceros v. Kaiser*, No. 25-cv-06924-EMC (EMC), 2025 U.S. Dist. LEXIS 179594, at *33 (N.D. Cal. Sep. 12, 2025) (citation omitted). The Court finds that there is a significant risk of erroneous deprivation if a noncitizen released upon their own recognizance may be re-

detained without a neutral decisionmaker analyzing whether re-detention is warranted. Hence, this factor also favors Petitioner.

Finally, as to the third Mathews factor, "[i]f the government wishes to re-arrest [a petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). Further, detention hearings in immigration courts are commonplace and impose a "minimal cost." Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025); Abduraimov v. Andrews, No. 1:25-CV-00843-EPG-HC, 2025 WL 2912307, at *7 (E.D. Cal. Oct. 14, 2025) ("Courts generally have found that the cost of providing a bond hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a bond hearing would be fiscally or administratively burdensome."); cf. Hernandez v. Sessions, 872 F.3d 976, 996 (9th Cir. 2017) (noting that "[t]he costs to the public of immigration detention are 'staggering': $158 each day per detainee, amounting to a total daily cost of $6.5 million. Supervised release programs cost much less by comparison: between 17 cents and 17 dollars each day per person"). In any event, "[d]etention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1036 (N.D. Cal. 2025). This factor thus also favors Petitioner.

The Court therefore finds that the Mathews factors weigh in favor of finding that Petitioner was entitled to a hearing before he was re-detained and placed in DHS custody. Accordingly, the Court will direct Respondents to immediately release Petitioner. 8 C.F.R. § 212.5(e)(2)(i); see also Singh v. Unknown Party, No. CV-26-00483-PHX-JCH (CDB), 2026 U.S. Dist. LEXIS 61597, at *9 (D. Ariz. Mar. 24, 2026) ("The Court finds that immediate release, rather than requiring another bond hearing, is the appropriate remedy.").

**IT IS ORDERED** that:

(1)    The Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**.

(2)    Respondents must **IMMEDIATELY RELEASE** Petitioner from custody

under the same conditions that existed before his re-detention.

(3) Respondents shall provide a Notice of Compliance within **THREE (3) BUSINESS DAYS** of Petitioner's release.

(4) Any request for fees and costs pursuant to 28 U.S.C. § 2412 shall be filed within 30 days of final judgment.  *See* 28 U.S.C. § 2412(d)(1)(B); (d)(2)(G).

(5) The Clerk of Court must enter judgment accordingly, and close this case.

Dated this 22nd day of May, 2026.

_____
Honorable Sharad H. Desai
United States District Judge